IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| PATRICIA STRICKLAND and ANDRA STRICKLAND, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | CIVIL ACTION No. 5:18-CV-3 (CAR) |
| DEUTSCHE BANK TRUST COMPANY AMERICAS, f/k/a BANKERS TRUST COMPANY, AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIES CORP., HOME EQUITY MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATE SERIES 2001-KS3; BARRETT DAFFIN FRAPPIER LEVINE & BLOCK, LLP; WELLS FARGO HOME MORTGAGE AND ALL JOHN AND JANE DOE ENTITIES; | : : : : : : : : : : : : : | |
| Defendants. | : : | |

## ORDER ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND TO SHOW CAUSE WHY COMPLAINT SHOULD NOT BE DISMISSED

Currently before the Court are *pro se* Plaintiffs Patricia and Andra Strickland's Complaint and Motion for Temporary Restraining Order and Preliminary Injunction. Plaintiffs seek to enjoin Defendants from completing the foreclosure sale of their property scheduled for February 6, 2018. On February 1, 2018, this Court held a hearing

1

on the Motion for Temporary Restraining Order ("TRO"). Plaintiff Patricia Strickland and defense counsel for Defendants Deutsche Bank Trust Company Americas, f/k/a Bankers Trust Company, as Trustee for Residential Asset Securities Corporation ("Deutsche Bank") and Wells Fargo Home Mortgage ("Wells Fargo") were present. As explained at the hearing, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 7] is **DENIED**. Moreover, Plaintiffs have until March 5, 2018, to **SHOW CAUSE** why their Complaint should not be dismissed for failure to state a claim upon which relief may be granted. This Order memorializes the Court's findings and conclusions at the hearing.

## BACKGROUND

This case is one in a long line of judicial proceedings initiated by Plaintiffs in an attempt to forestall the non-judicial foreclosure and sale of their home located at 996 S. Mulberry Street, Jackson, Georgia 30233 (the "Property"). Currently, Plaintiff's Property is scheduled for non-judicial foreclosure sale on February 6, 2018, and Plaintiffs filed their Motion for TRO to enjoin the sale.

On June 9, 2001, Plaintiffs executed a Promissory Note (the "Note") in favor of Mortgage Lenders Network USA, Inc. in the amount of $102,420.00.[1] To secure the indebtedness, Plaintiffs executed a Security Deed conveying the Property and granting

---
[1] [Doc. 1-3, p. 4].

2

Mortgage Lenders a first priority security interest in the Property.[2] The Security Deed was recorded on July 20, 2001 at Deed Book 318, Page 128, Butts County, Georgia records.[3] In the Security Deed, Plaintiffs explicitly granted to the lender and its assigns the power of sale of the Property: "Borrower does hereby grant and convey to Lender and Lender's successors and assigns, which power of sale, the following described property. . . ."[4]

On June 13, 2001, Mortgage Lenders assigned the Security Deed to Bankers Trust Company as Trustee pursuant to an Assignment of Security Deed.[5] The assignment was duly recorded on March 18, 2003 in Deed Book 384, Page 423, Butts County, Georgia records.[6] On April 15, 2002, Bankers Trust Company changed its name to Deutsche Bank Trust Company Americas. On July 30, 2013, Deutsche Bank Trust Company Americas, as Trustee, fka Bankers Trust Company, as Trustee by Residential Funding Company, LLC fka Residential Funding Corporation Attorney-in-fact assigned the Security Deed to Deutsche Bank through a Corporate Assignment of Security Deed, which was duly recorded on August 5, 2013, at Deed Book 734, Page 49, Butts County, Georgia records.[7] As the most recent assignee,

---

[2] [Doc. 11-3].
[3] *Id.*
[4] *Id.*
[5] [Doc. 11-4].
[6] *Id.*
[7] [Doc. 11-5].

Defendant Deutsche Bank is the current holder of the Security Deed.

It is undisputed Plaintiffs defaulted under the Note and Security Deed years ago. It appears Plaintiffs defaulted over seven years ago when they failed to pay their December 1, 2010 payment. Defendants have repeatedly attempted to foreclose on the Property since at least 2012, but Plaintiffs have successfully avoided foreclosure by filing actions in the United State Bankruptcy Court for the Middle District of Georgia to stay the foreclosure sales. Indeed, Plaintiffs have filed six Bankruptcy cases: (1) on October 26, 2011, Plaintiffs filed Bankruptcy number 11-53394-JPS-13, which was dismissed on November 28, 2011 due to debtor's failure to file information; (2) on March 31, 2012, Plaintiffs filed Bankruptcy case number 12-50862-JPS-13, which halted the scheduled May 1, 2012 foreclosure sale. This case was also dismissed for debtor's failure to make plan payments; (3) on September 30, 2013, Plaintiffs filed Bankruptcy case number 13-52589-JPS-7, which halted the scheduled October 1, 2013 foreclosure sale. As a result of this case, Plaintiffs' debt on the Property was discharged. As part of that case, Plaintiff filed an adversary proceeding against Defendant Wells Fargo, case number 14-05009, asserting claims for TILA, FDCPA, and wrongful foreclosure. Plaintiffs' claims were dismissed, and this Court affirmed that dismissal in case number 5:14-CV-186 (CAR), after Plaintiff appealed; (4) on June 2, 2014, Plaintiffs filed Bankruptcy case number 14-51250-JPS-13, which halted the scheduled June 3, 2014

foreclosure sale. This case too was dismissed for failure to file documents; (5) on October 7, 2014, Plaintiffs filed Bankruptcy case number 14-52396-JPS-13, which was also dismissed for failure to documents; and (6) on July 31, 2017, Plaintiffs filed Bankruptcy case number 17-51641-JPS-13, which was also dismissed for failure to file documents.

Plaintiffs have also filed two cases in District Court involving this Property: (1) on October 27, 2014, Plaintiffs filed case number 5:14-cv-382 (LJA) asserting claims against MERS, Deutsche Bank, and Wells Fargo for violation of the Truth in Lending Act, FDCPA, and wrongful foreclosure. That case was dismissed for Plaintiffs' failure to prosecute; and (2) on January 3, 2018, Plaintiffs filed the Complaint in this case, and on January 17, 2018, Plaintiffs filed a Motion for TRO to stop the February 6, 2018 foreclosure sale.

In another attempt to avoid foreclosure, Plaintiffs filed this case against Deutsche Bank, the current holder of Plaintiffs' Promissory Note and Security Deed; Wells Fargo, the mortgage servicer; and Barrett Daffin Frappier Levine & Block, the law firm employed to conduct the foreclosure sale of the property (the "Law Firm"). Plaintiffs' claims all center around their contention Defendant Deutsche Bank has failed to prove it is the current, valid holder of Plaintiffs' Note and Security Deed, and Defendant Law Firm has failed to validate the debt under the Fair Debt Collections

Practices Act ("FDCPA"). Specifically, Plaintiffs bring the following claims against Defendants: (1) violation of the FDCPA, 15 U.S.C. § 1692g, for failure to validate Plaintiffs' debt; (2) wrongful foreclosure; (3) violation of 15 U.S.C. § 45(a)(1), which Plaintiffs call the Unfair and Deceptive Trade Practices Act (which is actually called the Federal Trade Commission Act, or FTC Act) for alleged fraudulent activity in collecting mortgage payments for nine years without being the holder of the Note; and (4) violation of Plaintiffs' constitutional rights because it did not provide Plaintiffs with adequate notice of the non-judicial foreclosure sale of the property. Plaintiffs seek damages totaling over $63 million, and quiet title to the Property.

**DISCUSSION**

**Motion for TRO**

In their Motion for TRO seeking to stop the foreclosure sale, Plaintiffs claim the Court must enjoin the sale because (1) Defendants are not valid holders of the Note and Security Deed due to fraudulent assignments and thus have no authority to foreclose; and (2) Defendant Law Firm has violated the FDCPA by failing to validate Plaintiffs' debt, and thus the foreclosure must be enjoined. Although Plaintiffs only specifically seek a TRO against the Law Firm to stop the foreclosure sale, because they are *pro se*, the Court construes Plaintiffs' request to be against Deutsche Bank and Wells Fargo as

well. [8]

To obtain a TRO, Plaintiffs must prove the following elements: (1) a substantial likelihood of success on the merits; (2) irreparable harm to Plaintiff if the TRO is not issued; (3) the threatened injury must outweigh the harm that the TRO would cause to the nonmoving party; and (4) the TRO must not be adverse to the public interest.[9] Moreover, pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court may only issue a preliminary injunction or temporary restraining order if "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[10]

Injunctive relief is "an extraordinary and drastic remedy," and the Court is only authorized to grant such relief if "the movant clearly established the 'burden of persuasion' as to each of the four prerequisites."[11] As explained below, Plaintiffs clearly fail to meet the standards necessary to obtain a TRO.

I. **<u>Substantial Likelihood of Success on the Merits</u>**

Due to Plaintiffs' *pro se* status, the Court addresses each enumerated claim in their Complaint, as well as other claims that could be construed from their allegations. In sum, Plaintiffs wholly fail to establish a substantial likelihood of success on the

---

[8] *See Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990) (court must construe *pro se* plaintiffs' pleadings more liberally than those drafted by formally-trained lawyers).
[9] *See Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001).
[10] Fed. R. Civ. P. 65(c).
[11] *Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000).

merits on any of their claims. Indeed, it appears Plaintiffs fail to state any claim for relief, and therefore their Complaint should be dismissed.

### A. Fraudulent Assignment; Wrongful Foreclosure; Validity of Security Deed and Assignments

1. <u>Invalid Assignments</u>

Plaintiffs contend there was no valid assignment from the original lender, Mortgage Lenders Network, USA, Inc., to the alleged current holder Deutsche Bank; thus, the assignments of the Security Deed were fraudulent, and Defendant cannot foreclose on their Property. Plaintiffs fail to establish any likelihood of success on the merits of this claim.

First, Plaintiffs have no standing to challenge the validity of the assignments. Courts have routinely held that a debtor may not challenge an assignment between an assignor and assignee.[12] Moreover, the validity of the assignment does not affect whether Plaintiffs owe their obligations, but only to whom Plaintiffs are obligated.[13] The assignment of security deeds is explicitly permitted by Georgia law,[14] and Plaintiffs do not dispute they are in default. Finally, and most importantly, the

---

[12] *See McCloud v. HSBC Bank USA, N.A.*, 618 F. App'x 660, 660 n. 2 (11th Cir. 2015) ("[P]laintiff as non-party to the assignments—lacks standing to challenge the validity of the assignments."); *see also Kapila v. Atlantic Mtg & Inv. Corp.*, 184 F.3d 1335, 1338 (11th Cir. 1999) (holding that "a subsequent assignment of the mortgagee's interest . . . does not change the nature of the interest of the mortgagor or someone claiming under him.").

[13] *Id.*

[14] *See* O.C.G.A. § 44-14-64 (authorizing transfer of security deeds by way of assignment).

8

evidence in the record conclusively establishes that the assignments are valid, and Deutsche Bank is the current holder of the Security Deed and thus authorized to foreclose based on Plaintiffs' agreement in the Security Deed to grant the Lender and its assigns a power of sale of the Property. Thus, Plaintiffs' arguments regarding the invalidity of the assignments will not stop the foreclosure sale of their home.

2. Wrongful Foreclosure

Plaintiffs also cannot succeed on a wrongful foreclosure claim. "In Georgia, a plaintiff asserting a claim of wrongful foreclosure must establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages."[15] Again, Plaintiffs do not dispute that they are in default. Because Deutsche Bank establishes it is the current, valid holder of the Security Deed with a power of sale, the only requirement of the foreclosing party is to advertise and sell the property according to the instrument's terms, and that the sale be conducted in good faith.[16] Plaintiffs make no claim the foreclosure notice is defective or void under Georgia law, or that it fails to comply with the notice requirements for a non-judicial foreclosure as set out in O.C.G.A. § § 44-14-162 and 162.2.

To the extent Plaintiffs claim Defendants do not have standing to foreclose on

---

[15] *Chen v. Wells Fargo Bank, N.A.*, 2014 WL 806916 at *2 (N.D. Ga. Feb. 27, 2014).
[16] *Wright v. Barnett Mortg. Co.*, 226 Ga. App. 94, 96 (1997).

the Property because they did not produce the original Note or Security Deed, that claim fails. Georgia law does not require a foreclosing lender to produce the original note or security deed for inspection prior to a non-judicial foreclosure sale, such as the one at issue here.[17] Rather O.C.G.A. § 23-2-114 permits the holder and assignee of a security deed to exercise any power of sale therein regardless of whether the instrument also conveys title to the property. Thus, the nominee of the lender has the ability to foreclose on a debtor's property regardless of whether the nominee has a beneficial interest in the note secured by the property.

### 3. Fraud or Fraudulent Misrepresentation

Plaintiffs also cannot show a substantial likelihood of success on the merits on any kind of fraud or fraudulent misrepresentation claim under Georgia law. In Georgia, a plaintiff alleging fraud must show "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff."[18] Moreover, Rule 9(b) of the Federal Rules of Civil Procedure requires plaintiffs alleging fraud to "state with particularity the circumstances constituting fraud." Plaintiffs have failed to make any such showing.

**B. FDCPA**

Plaintiffs contend Defendants failed to send a validation of the debt in violation

---

[17] *See Watkins v. Beneficial, HSBC Mortg.*, 2010 WL 4319989 at *4 (N.D. Ga. Sept. 2, 2010) (collecting cases).
[18] *Baxter v. Fairfield Fin. Servs.*, 307 G. App. 286 (2010).

10

of the FDCPA, and therefore Defendants cannot proceed with the foreclosure and sale of the property. Again, Plaintiffs cannot show likelihood of success on the merits on this claim.

"The FDCPA prohibits a 'debt collector' from using a 'false, deceptive, or misleading representation or means in connection with the collection of any debt."[19] To state a claim for relief under the FDCPA, a plaintiff must allege facts sufficient to support that: (1) the defendant is a "debt collector"; (2) the challenged conduct is related to "debt collection activity"; and (3) the defendant engaged in an act or omission prohibited by the FDCPA.[20] Under section 1692g, if a consumer notifies the debt collector that any portion of the debt is disputed, the FDCPA requires the debt collector to cease collection activities until it provides verification of the debt to the consumer.[21] Plaintiffs contend Defendants have violated 15 U.S.C. § 1692g, because they failed to provide Plaintiffs with a debt validation letter after they requested one.

First, Plaintiffs cannot succeed because the FDCPA does not provide for equitable relief such as a TRO or preliminary injunction. "The thrust of the Fair Debt Collection Practices Act is prevention of harassment and abuse as false, deceptive or misleading practices. It clearly falls into a traditional tort area analogous to a number of

---

[19] *Reese v. Ellis, Painter, Ratteree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012).
[20] *Id.*
[21] 15 U.S.C. § 1692g(b).

11

traditional torts. The relief sought in money damages—the traditional form of relief offered in the courts of law. Indeed, equitable relief is not available to an individual under the civil liability section of the Act."[22]

Second, as to the merits of their claim, Plaintiffs must show that Defendants are "debt collectors," as defined under the FDCPA, and it does not appear Defendants here are "debt collectors." It is well established that the FDCPA applies only to "debt collectors" and not to creditors or servicers. The FDCPA defines a "debt collector" as:

> Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another[.] [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third party is collecting or attempting to collect such debts. For the purpose of section 1692f(6). . ., such term also includes any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.[23]

The law is clear that exercising or threatening to exercise a security interest in property through foreclosure is not considered "debt collection activity" for purposes of the FDCPA, except in limited circumstances not applicable here.[24]

As to the claims against the Law Firm, the Eleventh Circuit has concluded that

---

[22] *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982)
[23] 15 U.S.C. § 1692a(6).
[24] *See Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009) (concluding that non-judicial foreclosure on a security interest does not qualify as "debt-collection" and is therefore not subject to the requirements of § §1692e and 1692g of the FDCPA).

law firms initiating non-judicial foreclosures are not "debt collectors" within the meaning of the FDCPA.[25] Thus, to the extent the Law Firm Defendant, in its communications with Plaintiffs, was pursuing the enforcement of a security interest rather than collecting a debt, it appears its activities are not subject to the FDCPA's "debt collection" provisions.[26]

As to Deutsche Bank and Wells Fargo, the Eleventh Circuit has specifically rejected the assertion that an acquisition of a loan in default necessarily makes a creditor a debt collector.[27] Deutsche Bank is the owner of Plaintiffs' debt on the party, and thus is not attempting to collect on a "debt owed or due . . . another." Wells Fargo, as Plaintiffs' loan servicer, appears not to be a "debt collector" within the meaning of the FDCPA.[28]

### C. Federal Trade Commission Act, 15 U.S.C. § 45(a)

Plaintiffs also allege that Defendants engaged in unfair or deceptive acts or practices in violation of the FTC Act, 15 U.S.C. § 45(a). Plaintiffs cannot succeed on this claim because there is no private cause of action under the FTC. Section 5 of the FTC

---

[25] *Id.*

[26] The Court notes that even when a security interest is involved, an entity that engages in a broader scope of activity than simply seeking foreclosure may subject itself to the FDCPA. Thus, the FDCPA arguably may apply when the enforcer of a security interest seeks a personal judgment against the debtor for a deficiency. Here, however, the debt has been discharged, so this is not applicable.

[27] *See Davidson v. Capital One Bank USA), N.A.*, 797 F.3d 1309, 1316 (11th Cir. 2015) (holding that a non-originating debt holder "who does not otherwise meet the requirements of § 1692a(6) is not a 'debt collector' under the FDCPA, even where the consumer's debt was in default at the time the [debt holder] acquired it.").

[28] *See McWeay v. Citibank, N.A.*, 521 F. App'x 784 (11th Cir. 2013).

Act, 15 U.S.C. § 45(a), prohibits the "unfair or deceptive acts or practices in or affecting commerce" and requires the FTC to demonstrate a material representation likely to "mislead consumers acting reasonably under the circumstances.[29] The administration of the FTC Act "is in the hands of the administrative agency and not the private citizen."[30] "There is no private cause of action implied under the Federal Trade Commission Act."[31] Only the commissioner may bring a complaint for violations of this section.[32]

   1. <u>Unfair and/or Deceptive Business Practices under Georgia Law</u>

To the extent Plaintiffs' claims can be construed as claims for unfair and/or deceptive business practices under the Georgia Fair Business Practices Act ("FBPA"), those claims also fail. The Georgia FBPA prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."[33] The FBPA does not apply to transactions that occur in regulated areas of activity, such as loan lending and services.[34] "[B]ecause residential mortgage

---

[29] *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003).
[30] *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, n. 6 (5th Cir. 1977).
[31] *Lingo v. Albany Dept. of Community & Economic Dev.*, 195 F. App'x 891, 894 (11th ICr. 2006).
32  *See Federal Trade Commission v. Kiesner*, 280 U.S. 19, 25 (1929).
[33] O.C.G.A. § 10-1-393(a).
[34] *See* O.C.G.A. § 10-1-396(1) (FBPA does not apply to "actions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States.").

transactions are regulated by both state and federal law, the FBPA does not apply."[35] Thus, Plaintiffs cannot show a substantial likelihood of success on the merits for any violation of the FBPA.

### D. Constitution Violations

Finally, Plaintiffs contend Defendants have violated the 1st, 5th, and 14th Amendments "when the defendants never initiated an administrative process or some form of action against the plaintiffs' property that constitutes a non-judicial foreclosure process, because all the plaintiffs received was one letter from the defendants giving notice of a sale date. Defendant never presented any evidence prior to their non-judicial foreclosure that would have given the defendant the standing and jurisdiction to conduct their non-judicial foreclosure, such as the Note and mortgage."[36] Plaintiffs further state "Defendants never proved that they were the holders to the Note and Mortgage prior to the foreclosure" and thus it was wrongful.[37]

Plaintiffs do not state any constitutional violations. These allegations are merely duplicative of their previous claims.

### II. Irreparable Harm

Plaintiffs also fail to establish they will suffer irreparable harm if a TRO is not

---

[35] *James v. Bank of America, N.A.*, 332 Ga. App. 365 (2015).
[36] Complaint [Doc. 1].
[37] *Id.*

15

issued. "An injury is irreparable if it cannot be undone through monetary damages." Irreparable injury has been characterized as a loss of a movant's enterprise or impending loss or financial ruin. Plaintiffs have been in default for years, and Defendants have the right to foreclose on the property and sell it.

### III. Balance of Equities

In determining whether to grant a TRO the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."[38] The equities here appear to be in Defendants' favor, as it has had to spend money litigating this property for over seven years, pay attorneys' fees, and incur costs in attempting to foreclose this property since at least 2012.

### IV. Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."[39] There is substantial public interest in protecting parties' ability to contract, banks' ability to loan money, and citizens' ability to receive secured loans.

---

[38] *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) (citing *Amoco Production Co.,* 480 U.S. 531, 542, (1987)).
[39] *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) (citations omitted).

## V. Security

Finally, Plaintiffs' request for injunctive relief must be denied because Plaintiffs fail to give or even offer the security required by Federal Rule of Civil Procedure 65(c). Specifically, Rule 65(c) states that "[t]he court may issue a preliminary injunction or a temporary restraining order <u>only if</u> the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[40] Plaintiff does not deny that she has failed to make payments in accordance with the loan she signed and has made no offer to tender the required security.[41]

## CONCLUSION

For the foregoing reasons, and as explained in the hearing held on February 1, 2018, Plaintiffs' Motion for TRO and Preliminary Injunction [Doc. 7] is **DENIED**. Moreover, as set forth above, it appears to this Court Plaintiffs' Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. **Plaintiffs have until March 5, 2018**, to file a response to this Order and **SHOW CAUSE why their Complaint should not be dismissed** for the reasons explained above. Failure to file a response will result in

---

[40] Fed. R. Civ. P. 65(c) (emphasis supplied).
[41] *See Jackman v. Hasty*, No 1:10-SC-2485, 2011 WL 854878, at *1 (N.D. Ga. March 8, 2011) (temporary restraining order denied where plaintiff failed to offer the security required by Fed. R. Civ. P. 65(c)).

dismissal of this case.

**SO ORDERED**, this 5th day of February, 2018.

S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT